**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **A.H.C.D.L.C., A MINOR; G.S.R.J., A MINOR; BY AND THROUGH ERICA SANTAMARIA, AS NEXT FRIEND OF MINORS,**<br><br>**Petitioners,**<br>**v.**<br><br>**FEDERAL FIELD SPECIALIST, OFFICE OF REFUGEE RESETTLEMENT; FEDERAL FIELD SPECIALIST SUPERVISOR, OFFICE OF REFUGEE RESETTLEMENT; ALEX J. ADAMS, ASSISTANT SECRETARY OF THE ADMINISTRATION FOR CHILDREN AND FAMILIES; ANGIE SALAZAR, ACTING DIRECTOR OF THE OFFICE OF REFUGEE RESETTLEMENT; AND ROBERT F. KENNEDY, JR., SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,**<br><br>**Respondents.** | **NO. 2:26-cv-09996-KS**<br><br>**MEMORANDUM OPINION AND ORDER** |

Before the Court is a Verified Petition for Writ of Habeas Corpus filed by two minors, A.H.C.D.L.C. and G.S.R.J., by and through Erica Santamaria, as Next Friend of Minors. (Dkt. No. 4[1].) For the following reasons, the Petition is **GRANTED**.

## I. BACKGROUND

### A. A.H.C.D.L.C.

A.H.C.D.L.C. is a 16-year-old girl who was detained at an ORR-subcontracted facility, Hanna's House Rancho Cucamonga ("HH-RC"), in Rancho Cucamonga, California. (Dkt. No. 4 ("Pet.") ¶¶ 2, 13; Dkt. No. 13 ("Answer") at 13.) She is a citizen of Mexico. (Answer at 13.) She was in ORR's care and custody from May 7, 2026, until September 25, 2026. (Pet. ¶ 21; Answer at 3; Dkt. No. 15 ("Status Report") at 2.) After her paternal grandfather received direct threats to his life, A.H.C.D.L.C. fled her home country. (Pet. ¶ 22.) She seeks reunification with her mother and sponsor, A.D.L.C.S., who lives in the United States. (Pet. ¶¶ 13, 22; *see also* Answer at 13.)

On May 7, 2026, the same day A.H.C.D.L.C was placed in ORR's custody and care, A.H.C.D.L.C.'s mother, A.D.L.C.S., was identified as a potential Category 1 sponsor. (Answer at 13; Dkt. No. 14 ("Traverse") at 3.) In mid-May, it was identified that A.D.L.C.S. speaks only the Mixteco Bajo language, and thus she worked with an Intake Specialist ("IS") and an interpreter throughout the process to complete all sponsorship application requirements. (Answer at 13-14; Traverse at 4.) By early June of 2026, after working with an IS and Division of Sponsor Administration Federal Field Specialist ("DSA FFS"), A.D.L.C.S. had provided her fingerprinting, identification documents, proof of address, and address history. (Answer at 14; Traverse at 3.) (Pet. ¶ 24; Answer at 14.) By mid-June of 2026, the Adult Care Giver ("ACG")

---

[1] The Court's page citations refer to the page numbers provided by its CM-ECF docketing system that appear near the top right corner of each page.

had provided fingerprints, and the results from the background check were mitigated by mid-July. (Answer at 15; Traverse at 4.)

By early July of 2026, A.D.L.C.S. had notified the DSA FFS that she had secured a new residence after the homeowner where she previously lived was not willing to undergo the required vetting process. (Pet. ¶ 25; Answer at 15; Traverse at 4.) On or around July 21, 2026, the home study provider conducted an in-person visit to A.D.L.C.S.'s home. (Pet. ¶ 26; Answer at 15; Traverse at 4.) By the end of July of 2026, ORR had received the ITINs for A.D.L.C.S. and the ACG, the Mexican consulate's verification of A.D.L.C.S.'s identity, and a home study report with a positive recommendation for reunification, which the DSA FFS reviewed. (Pet. ¶ 26; Answer at 15; Traverse at 4.)

By the end of July of 2026, the remaining requirements for sponsorship vetting were: (1) a Division of Vetting ("DOV") report, in which the DOV coordinates with federal law enforcement partners to determine whether there is an existing open criminal investigation on sponsors that may not appear in the fingerprint-based or internet-based background checks; (2) DNA testing; (3) in-person identification verification; and (4) a sponsor suitability determination. (Answer at 16.) By mid-August, the DSA FFS received the DOV report, which returned as "clear with a caveat," identifying A.D.L.C.S. as possibly entering without inspection; however, it determined that this did not likely impact A.D.L.C.S.'s suitability as a sponsor. (Answer at 16; Traverse at 4.) On August 18, 2026, counsel for A.H.C.D.L.C. "emailed a formal letter to ORR Acting Director Angie Salazar, demanding either a final decision on the FRP or immediate release to their mother." (Pet. ¶ 28.) ORR never acknowledged the correspondence. (*Id.*) On August 31, 2026, DNA test results confirmed A.D.L.C.S. and A.H.C.D.L.C. are mother and daughter. (Pet. ¶ 30; Answer at 16.) An issue arose with the in-person identification verification, as the ACG and A.D.L.C.S. submitted forms of identification that were not compliant with the UAC Bureau Policy Guide. (Answer at 16.) The ACG had a foreign passport not compliant with the policy, and A.D.L.C.S. had a

lawful permanent resident ("LPR") card; however, she did not present it at the in-person identification verification appointment, likely because of language barrier issues. (Answer at 16; Traverse at 4.) Nonetheless, the DSA FFS submitted a category 1 exemption for the non-conforming identification documents. (Answer at 16; Traverse at 4.) As of September 18, 2026, the category 1 exemption remained pending, as well as the sponsorship suitability determination and final release decision. (Answer at 16; Traverse at 4.) On September 25, 2026, Petitioner A.H.C.D.L.C. was released from ORR custody. (Status Report at 2.)

While she was detained in HH-RC, "Petitioner A.H.C.D.L.C. . . . suffered significant emotional and psychological harm." (Pet. ¶ 32.) A.H.C.D.L.C.'s sleep and eating habits suffered, as she had felt the reunification process was taking a long time, and she verbalized her desire to live with her mother. (Pet. ¶ 32.)

**B. G.S.R.J.**

G.S.R.J. is a 9-year-old girl who is currently detained at an ORR-subcontracted facility, A Greater Love Whittier ("AGL-W"), in Whittier, California. (Pet. ¶¶ 2, 14.) She is a citizen of El Salvador. (Answer at 17.) She seeks reunification with her mother and sponsor, F.M.J.R. (Pet. ¶¶ 14, 35.) She has been in ORR's custody since June 1, 2026. (Pet. ¶ 34; Answer at 17.) On that same day, her mother, F.M.J.R., was identified as a potential Category 1 sponsor and confirmed to the IS her interest in sponsoring G.S.R.J. (Answer at 17.)

On June 2, 2026, F.M.J.R. completed the first two parts of the Sponsorship Application, and the case was referred to DSA for assignment to a DSA FFS. (*Id.*; Traverse at 5.) In July of 2026, the need for a Category 1 waiver was documented after F.M.J.R. provided a foreign identification and lack of a Social Security Number ("SSN") or Individual Taxpayer Identification Number ("ITIN"). (Answer at 18; Traverse at 5.) By the end of July of 2026, F.M.J.R. had completed the sponsorship application and had submitted her identification

documents, fingerprinting, a self-attestation letter for proof of income, supplemental bank statements, and proof of her ITIN application. (Pet. ¶¶ 36-39; Answer at 17-18; Traverse at 5.)

As with Petitioner A.H.C.D.L.C., on August 18, 2026, counsel for Petitioner G.S.R.J. "emailed a formal letter to ORR Acting Director Angie Salazar, demanding either a final decision on their [FRP] or immediate release to their sponsor." (Pet. ¶ 40.) ORR never acknowledged the correspondence. (*Id.*) In mid-August of 2026, the home study provider completed an in-person visit at the F.M.J.R.'s residence. (Pet. ¶ 41; Answer at 19; Traverse at 5.) By mid-August, F.M.J.R. had provided court documentation regarding a previous charge that resulted from an internet background check for the ACG, which the DSA FFS then uploaded. (Answer at 18; Traverse at 5.) By the end of August of 2026, F.MJ.R.'s birth certificate and provided identification were sent to the consulate for verification, and the home study report was returned with a positive recommendation for reunification, including a safety plan with local resources and family sessions to review post-release expectations. (Pet. ¶ 41; *see also* Answer at 19; Traverse at 5.)

In early September of 2026, the DSA FFS requested a valid proof of address for F.M.J.R., who responded that she could not provide one. (Answer at 19; Traverse at 4.) The DSA FFS requested proof of address documenting the ACG's name in the alternative and requested the ACG's SSN and a copy of the Social Security card. (Answer at 19; Traverse at 4.) By mid-September of 2026, DNA test results confirmed G.S.R.J. and F.M.J.R. are mother and daughter, and F.M.J.R. had attended her in-person identification appointment. (Answer at 19; Traverse at 5.) On September 28, 2026, the ORR case manager for G.S.R.J. provided an update to Petitioners' counsel that the category 1 exemption was approved on September 16, 2026. (Status Report at 2.) However, the category 1 exemption is still waiting for the Branch Chief's review and approval, and the sponsor suitability determination remains pending. (*Id.*)

\\

\\

While she has been detained in AGL-W, Petitioner G.S.R.J. "has experienced emotional distress resulting from their continued detention and uncertainty regarding reunification." (Pet. ¶ 43.) G.S.R.J.'s mother, F.M.J.R., visits her weekly in person at AGL-W. (*Id.*) But during one such visit, G.S.R.J. "expressed an episode of sadness triggered by food . . . , which led to tearfulness related to missing her family." (*Id.*)

**C. PROCEDURAL BACKGROUND**

On September 4, 2026, Petitioners filed the Petition. (Dkt. No. 4.) On September 9, 2026, the Court granted Petitioners' request for appointment of Erica Santamaria as Guardian ad Litem for A.H.C.D.L.C. and G.S.R.J. (Dkt. No. 9.) On September 15, 2026, Respondents filed an Answer on September 15, 2026. (Dkt. No. 13.) On September 18, 2026, Petitioners filed a Traverse. (Dkt. No. 14.) This case is fully consented to proceed before a magistrate judge. (Dkt. No. 11.)

On September 29, 2026, Petitioners filed a status report with two updates. (Dkt. No. 15.) First, on September 25, 2026, "Petitioner A.H.C.D.L.C. was released from ORR custody." (*Id.* at 2.) Second, the category 1 exemption approval and sponsorship suitability determination for G.S.R.J. remain pending. (*Id.*) As of the date of the status report, there is no scheduled release date or timeline for G.S.R.J. (*Id.*)

Petitioners' Next Friend, Erica Santamaria, is the Program Manager for the Detained Youth Empowerment Project Team at Immigrant Defenders Law Center. (Dkt. No. 4-1 ¶ 1.) Petitioners appear collectively by and through their Next Friend, Mrs. Santamaria. (Dkt. No. 4 ¶ 15); *see* 28 U.S.C. § 2242 (authorizing next friend status in the habeas context).

\\

\\

\\

## II. LEGAL STANDARDS

### A. HABEAS PETITIONS

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020); *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under § 2241 for noncitizens subject to detention following an order of removal).

### B. LEGAL FRAMEWORK

In 2002, Congress enacted the Homeland Security Act ("HSA"). Pub. L. No. 107-296, 116 Stat. 2135 (2002) (codified in relevant part at 6 U.S.C. § 279). The HSA, *inter alia*, conferred responsibility for the care and placement of unaccompanied alien children ("UACs") with ORR, an office within the Department of Health and Human Services ("HHS"). *See* 6 U.S.C. § 279(a), (b)(1)(A), (g)(2). The HSA defines a UAC as "a child who—(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom—(i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

\\

\\

In 2008, Congress enacted the Trafficking Victims Protection Reauthorization Act ("TVPRA"), "to enhance the efforts of the United States to prevent trafficking" and provide additional protections for children who are present in the United States without legal status. 8 U.S.C. § 1232(a)(1). The TVPRA requires that ORR "promptly place[]" a UAC "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). The HHS Secretary may consider the UAC's "danger to self, danger to the community, and risk of flight." *Id.* Once the UAC is in ORR custody, removal proceedings commence. 8 U.S.C. § 1232(a)(5)(D).

While removal proceedings are pending, the TVPRA confers responsibility of the care and custody of UACs to HHS and requires a determination that a sponsor "is capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(b)(1), (c)(3)(A). This safety and suitability assessment must "at a minimum, include verification of the [sponsor]'s identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." 8 U.S.C. § 1232(c)(3)(A). Such an assessment does not always require a home study. *See* 8 U.S.C. § 1232(c)(3)(B) (requiring an assessment, for instance, "for a child who is a victim of a severe form of trafficking in persons, [or] a special needs child with a disability"); *see also* 45 C.F.R. § 410.1204 (noting that ORR home studies are discretionary in some circumstances and mandatory in others).

In April of 2024, ORR promulgated the Unaccompanied Children Program Foundational Rule ("Foundational Rule") to codify comprehensive regulations governing its UAC program. 48 C.F.R. pt. 410. The Foundational Rule also implements substantive requirements of the Flores Settlement Agreement relevant to ORR's care and custody of UACs. Unaccompanied Children Program Foundational Rule, 89 Fed. Reg. 34384-85 (Apr. 30, 2024) (codified at 45 C.F.R. pt. 410). The Foundational Rule requires ORR to place every UAC "in the least restrictive setting that is in the best interest of the child." 45 C.F.R. § 410.1103(a). The

publicly available UACB Policy Guide provides procedures for identifying and conducting suitability assessments of potential sponsors. *See* ORR UAC Bureau Policy Guide ("UACB Policy Guide"), https://acf.gov/orr/policy-guidance/unaccompanied-children-bureau-policy-guide (last visited October 5, 2026).

There are four categories of potential sponsors; Category 1 consists of parents or legal guardians. UACB Policy Guide § 2.2.1. ORR, through its case managers, conducts a suitability assessment of the potential sponsor, including a review of the "sponsor's strengths, resources, risk factors and special concerns within the context of the [UAC]'s needs, strengths, risk factors, and relationship to the sponsor." *Id.* §§ 2.2.2, 2.4. A potential sponsor must complete a sponsorship application; provide identification documentation for the sponsor and any other adults living in the household or identified in a sponsor care plan; and, along with any adult living in their household, undergo a background check. *Id.* §§ 2.2.4, 2.5. All potential sponsors must also submit proof of address, income, sponsor-child relationship, an SSN or ITIN (or application for an SSN or ITIN), and, if applicable, criminal history documents. *Id.* § 2.2.4. To do so, potential sponsors must follow specific criteria, including presenting acceptable identification documents and undergoing a background check to prove their identity, submitting a DNA test to prove their relationship to the UAC, interviews, and in some cases, a home study to confirm their suitability as a sponsor. *Id.* A home study consists of interviews, a home visit, and a written report containing a case worker's findings. *Id.* § 2.4.2. Once the assessment of the potential sponsor is complete, the care provider makes a release recommendation to ORR. *Id.* § 2.7. ORR must adjudicate a completed sponsor application for a relative who has previously been the child's primary caregiver "within 10 calendar days of receipt," unless there is "an unexpected delay," such as when a home study must be completed. 45 C.F.R. § 410.1205(b). ORR must also formally review pending sponsor applications every 90 days, to ensure that the reunification process does not stall. 45 C.F.R. § 410.1207(a).

\\

\\

## III. DISCUSSION

Petitioners assert three claims for habeas relief: (1) Petitioners' detention violates the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 8 U.S.C. § 1232; (2) Petitioners' detention violates their right to substantive due process under the Fifth Amendment; and (3) Petitioners' detention violates their right to procedural due process under the Fifth Amendment. (Pet. ¶¶ 67-85.) Because the Court grants Petitioners' habeas relief on procedural due process grounds, the Court does not address Petitioners' first two claims for relief.

### A. Exhaustion of Administrative Remedies

As a preliminary matter, the Court addresses exhaustion, as Respondents argue that Petitioners' habeas action is untimely because "the sponsorship application for Petitioners' sponsors remain pending and important vetting requirements have not yet been completed." (Answer at 20.) Respondents acknowledge that there is no statutory exhaustion requirement in 28 U.S.C § 2241. (*Id.*) While the exhaustion requirement "is prudential, rather than jurisdictional, for habeas claims" such that a court may waive the requirement, courts may nevertheless require exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (*quoting Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Nonetheless, courts "have discretion to waive a prudential requirement" if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the

administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 998, 1000 (9th Cir. 2004).

Here, the Court finds that a waiver of the exhaustion requirement is warranted. The Court finds that none of the *Hernandez* factors justify the Court to *require* exhaustion. 872 F.3d at 988. First, the agencies' expertise in sponsorship applications is not necessary to decide the *legal* questions at issue here. Second, because Petitioners' habeas petition includes, *inter alia*, a due process claim, the administrative scheme is likely futile. Lastly, "[w]here the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the [agencies] to possibly correct an error." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026). Consequently, the Court exercises its discretion to forgo the exhaustion requirement in this case. *Laing*, 370 F.3d at 998.

**B. Procedural Due Process**[2]

Petitioners argue that their continued detention and Respondents' delay in approving the sponsorship applications for A.H.C.D.L.C. and G.S.R.J. violate Procedural Due Process. (Pet. ¶¶ 78-85; Traverse at 12-14.) Respondents argue that, considering the factors under *Mathews v. Eldridge*, ORR has not violated the procedural due process rights of Petitioners or their sponsors. (Answer at 22-25.)

\\

\\

---

[2] Although Petitioner A.H.C.D.L.C. has been released, the Court does not deny the habeas petition as moot, and nor have Respondents argued as such, because Petitioners also request relief in the form of prohibiting the re-detention of Petitioners. (Pet. at 24.). This is in line with other courts in this district. *See, e.g.*, *Cruz v. Lyons*, No. 5:25-CV-02879-MCS-MBK, 2025 WL 3443146, at *3 (C.D. Cal. Dec. 1, 2025) ("[H]abeas relief is available 'to attack future confinement and obtain future releases.' Thus, habeas relief remains available at least to prevent a further detention without a pre-detention hearing." (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973))); *Saballos Rosales v. Noem*, No. 5:26-CV-00112-MBK, 2026 WL 2455935, at *3 (C.D. Cal. Aug. 21, 2026) ("If this case is dismissed as moot without further relief, Respondents will no longer be prohibited from re-detaining Petitioner without pre-deprivation process. Respondents provide no assurance they will not do so.").

The Due Process Clause of the Fifth Amendment prohibits the Government from depriving any individual of their "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause applies to all 'persons' within the United States . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. Thus, nonpunitive government detention violates the Due Process Clause unless the detention is ordered "in certain special and narrow . . . circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (citations omitted).

When determining the procedures due process requires, courts weigh the three factors outlined in *Mathews v. Elridge*: (1) "the private interest" at stake; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976). Here, the Court finds that all three *Mathews* factors weigh in Petitioners' favor.

*1. The Private Interest*

Petitioners identify two private interests at stake: (1) their liberty interest in freedom from detention and (2) family integrity and familial association.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Although minors are "always in some form of custody," they nonetheless "retain a strong interest in being free from unnecessary government interference

with their liberty." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1195 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) (citing *Schall v. Martin*, 467 U.S. 253, 265 (1984)). Moreover, several other district courts have recognized the liberty interest of children in ORR custody. *See e.g.*, *I.R.L.M. v. Salazar*, No. 5:26-cv-04335-DTB, 2026 WL 2597933, at *7 (C.D. Cal. Sept. 2, 2026); *R.D.T.M. v. Wofford*, 2025 WL 2686866 (E.D. Cal. Sep. 18, 2025); *A.N.P.S. v. Salazar*, 2025 WL 3707333, at * 4 (N.D. Ill. Dec. 22, 2025); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1195 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *J.E.C.M. v. Lloyd*, 352 F. Supp. 3d 585, 585 (E.D. Va. 2018); *M.A. v. Molina*, No. 4:26-CV-00415, 2026 WL 741623, at *3 (N.D. Ohio Mar. 17, 2026). Additionally, "several courts have found that, at least when a parent is requesting reunification, the burden should be on ORR to show why continued custody of the child is appropriate, rather than placing the burden on the parent." *M.A.*, 2026 WL 741623, at *4 (listing cases).

Here, the Court finds that both Petitioners have a substantial liberty interest in freedom from detention. A.H.C.D.L.C. was separated from her mother and detained for nearly five months while the vetting process remained ongoing, and Respondents did not provide any valid justification for her continued detention and separation from her mother. Similarly, G.S.R.J. has been separated from her mother and detained for over four months while the vetting process remains ongoing, and Respondents have not provided any valid justification for her continued detention and separation from her mother.

Respondents argue that Petitioners do not have a liberty interest at stake because "juveniles, unlike adults, are always in some form of custody." (Answer at 21 (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)). Several other district courts, including a court in this district, have rejected this exact argument, reasoning that "Respondents' reliance on *Flores* is misplaced." *See, e.g.*, *I.R.L.M.*, 2026 WL 2597933, at *7; *M.A.*, 2026 WL 741623, at *3. This Court agrees. Indeed, "*Flores* 'concerns UACs who are (1) detained for the first time and (2)

do not have a readily available parent, close relative, or legal guardian to take custody of them.'" *I.R.L.M.*, 2026 WL 2597933, at *7 (quoting *A.N.P.S. v. Salazar*, Case No. 25-cv-14778, 2025 WL 3707333, at *7 (N.D. Ill. Dec. 22, 2025)). Here, although Petitioners were detained for the first time, they have readily available mothers to take custody of them. Petitioners' mothers have sought reunification with their daughters for over four months. Thus, *Flores* is inapplicable here to determine the procedural due process protections that must be afforded to Petitioners. *See I.R.L.M.* 2026 WL 2597933, at *7; *A.N.P.S.*, 2025 WL 3707333, at *7. Therefore, the Court finds Respondents' arguments unavailing.

Next, Petitioners assert an interest in family integrity and family association. (Pet. ¶¶ 78, 82; Traverse at 12.) Several district courts have recognized that the due process interest in family integrity or family unity is implicated when a child is in ORR custody and seeks family reunification with a sponsor. *See, e.g.*, *I.R.L.M.*, 2026 WL 2597933, at *8; *M.A.*, 2026 WL 741623, at *5; *Santos v. Smith*, 260 F. Supp. 3d 598, 610-11 (W.D. Va. 2017); *Beltran v. Cardall*, 222 F. Supp. 3d 476, 482 (E.D. Va. 2016); *J.E.C.M.*, 352 F. Supp. 3d at 585; *see also Lucas R. v. Becerra*, Case No. 2:18-cv-05741-DMG-BFM, 2022 WL 2177454, at *25 (C.D. Cal. Mar. 11, 2022) ("Class Members whose potential sponsors are family members also have a strong interest in familial association [under the *Mathews* test]. This interest is strongest for minors with Category 1 parent/guardian sponsors."). This Court agrees. Respondents do not dispute such an interest but instead argue that "a parent's interest in raising their child is neither absolute nor unqualified." (Answer at 23 (quoting *Martin v. St. Mary's Dep't of Soc. Servs.*, 346 F.3d 502, 506 (4th Cir. 2003)).) Moreover, Respondents argue that the parent's interest "must give way to the state's responsibility to investigate circumstances that could lead to neglect and abuse, as required by the TVPRA for ORR." (Answer at 23.)

Here, both mothers have complied with the sponsorship process every step of the way, and ORR has the responsibility of placing Petitioners in the least restrictive setting that is in their best interests. *See* 8 U.S.C. § 1232(c)(2)(A). Petitioners are asserting their due process

rights to family integrity and family association to allow for reunification with their mothers, the least restrictive setting, after being separated for more than four months. "There is no doubt that Respondents' actions have 'encroached' upon [Petitioners'] right to family integrity 'considerably.'" *Maldonado*, 2018 WL 2089348, at *7 (quoting *Beltran*, 222 F. Supp. 3d at 482).

Thus, the first *Mathews* factor strongly weighs in Petitioners' favor.

2. *Risk of Erroneous Deprivation*

Next, Petitioners argue that the risk of an erroneous deprivation of Petitioners' interests in liberty and family integrity is high, as Respondents' procedures have allowed Petitioners to languish in ORR's custody for over four months, and Respondents have failed to follow the statutes, regulations, and procedures governing the sponsorship determinations. (Pet. ¶ 83; Traverse at 12-14.)

"With respect to the second *Mathews* factor, it is appropriate to review the process that has been provided to Petitioners so far." *Maldonado v. Lloyd*, No. 18 CIV. 3089 (JFK), 2018 WL 2089348, at *7 (S.D.N.Y. May 4, 2018); *see, e.g.*, *Beltran*, 222 F. Supp. at 482-88; *Santos v. Smith*, 260 F. Supp. 3d 598, 611-14 (W.D. Va. 2017). Several other district courts have evaluated whether the existing ORR procedures adequately protected against the risk of erroneous deprivation or whether they had deficiencies such as causing an extensive delay or placing an improper burden on the sponsor. *Lucas R. v. Becerra*, No. CV 18-5741-DMG (PLAX), 2022 WL 2177454, at *27 (C.D. Cal. Mar. 11, 2022) ("The Court agrees . . . that 'significant' and 'unexplained delay[s] in responding to [a proposed sponsor's] unification request' violate due process irrespective of other procedural defects." (quoting *Santos v. Smith*, 260 F. Supp. 3d 598, 613–14 (W.D. Va. 2017))); *M.A.*, 2026 WL 741623, at *6 (listing cases);

*Santos*, 260 F. Supp. at 613 (finding that ORR placed an improper burden on the parent sponsor to disprove ORR's initial determination and justify reunification).

Here, A.H.C.D.L.C. was in custody from May 7, 2026. That same day, her mother, A.D.L.C.S., was identified as a potential Category 1 sponsor. A.D.L.C.S., has satisfied ORR's requests to determine her current sponsorship suitability by submitting a completed sponsorship application; providing her fingerprinting, identification documents, proof of address, and address history; providing information for a DOV report that ultimately determined that her potential legal status did not impact her suitability as a sponsor; received a home study report with a positive recommendation for reunification; submitted DNA results that confirmed her relationship with her daughter; and resolved issues with the document provided for the in-person verification for herself and the ACG. Similarly, G.S.R.J. has been in ORR custody since June 1, 2026. That same day, her mother, F.M.J.R., was identified as a potential Category 1 sponsor. Similarly, G.S.R.J.'s mother, F.M.J.R., has also complied with ORR's requests to determine her current sponsorship suitability by submitting a completed sponsorship application; providing her fingerprinting, identification documents, a self-attestation letter for proof of income, supplemental bank statements, and proof of her ITIN application; received a home study report with a positive recommendation for reunification; submitted DNA results that confirmed her relationship with her daughter; and worked with the DSA FFS to provide sufficient proof of address and documentation regarding the ACG's previous charge that resulted from the internet background check. As of September 29, 2026, all that remains pending is a final review and approval of the category 1 exemption and the sponsorship suitability determination.

Respondents argue that, considering ORR's administrative review process and the procedural protections in *Lucas R. v. Becerra*, there is no risk of erroneous deprivation. (Answer at 24-25.) Petitioners contend that "Respondents' reliance on *Lucas R.* is misplaced" because the court in *Lucas R.* "did not address whether children may remain detained for

months while that determination remains unresolved." (Traverse at 13.) The Court agrees with Petitioners. Indeed, the court in *Lucas R.* noted that "Case Managers must begin working on family reunification within 24 hours of receiving a minor, and *a sponsorship packet should be processed* for the different categories of sponsors within the following recommended timeframes: *10 calendar days for Category 1* and 2A . . . ." 2022 WL 2177454, at *27 (emphasis added). The court also noted the mandatory periodic 90-day review of all pending family reunification applications, and, as Petitioners correctly note, Respondents fail to provide any indication that such a review occurred. (Traverse at 13.) Moreover, the court in *Lucas R.* noted that "in individual cases of egregious delay, minors retain the option to seek judicial review of their continued detention." 2022 WL 2177454, at *28.

Respondents also argue that the delay in processing the mothers' sponsorship is not unreasonable, considering the potential exploitation for UACs by sponsors. (Answer at 25.) However, Respondents do not provide individualized justification that is sufficient to explain the agencies' delay in determining whether A.D.L.C.S. and F.M.J.R. are suitable sponsors for purposes of meeting the statutory, regulatory, and procedural requirements. *See E.H.C.F. v. Kennedy*, No. 3:25-CV-2142 (VDO), 2026 WL 145229, at *12 (D. Conn. Jan. 16, 2026) ("[ORR's] vague explanation as to the delay—that additional vetting is required and that an 'investigation' as to safety concerns needs to be completed—does not comport with basic procedural due process."). Although there was some delay on A.D.L.C.S.'s part in providing the necessary documents for A.H.C.D.L.C.'s application, these appear to stem from A.D.L.C.S.'s language barriers, and the UACB Policy Guide requires that sponsors have access to interpretation services and translations to their native language. *See, e.g.*, UACB Policy Guide §§ 2.2, 2.2.2. Likewise, regarding G.S.R.J.'s application, there was some delay on the part of F.M.J.R. and the ACG in providing the documents relevant to the ACG's charge, but these appear to stem from confusion over what was required and an inability to access old court records. Indeed, other than judicial review, Petitioners have no mechanism to obtain timely

review. Consequently, the prolonged separation of A.H.C.D.L.C. and G.S.R.J. from their mothers has caused them emotional distress and sadness.

Thus, this Court finds that the second *Mathews* factor also weighs in Petitioners' favor.

*3. The Government's Interest*

For the third *Mathews* factor, Petitioners do not dispute that Respondents "possess a legitimate interest in protecting children from trafficking, abuse, neglect, and exploitation." (Traverse at 14 (citing 8 U.S.C. § 1232(c)(3)(A); 6 U.S.C. § 279(b)(2)(A)(ii)).) Petitioners also do not dispute that Respondents have an interest in careful review of sponsorship applications to ensure the safe release of UACs in ORR's care. (Traverse at 14; *see* Answer at 25.) However, Petitioners argue that "[t]he TVPRA reflects Congress's judgment that children's interests are ordinarily served through prompt placement in family-based settings once appropriate vetting has occurred." (Traverse at 14 (citing 8 U.S.C. § 1232(c)(2)(A)).) Moreover, Petitioners argue that additional safeguards and procedures would not impose a substantial burden because "Petitioners do not seek to eliminate sponsor vetting"; rather, "[t]hey seek timely adjudication of reunification requests and meaningful review of prolonged detention." (Traverse at 14.)

The Court agrees with Petitioners. Respondents have failed to provide any individualized facts that suggest that Petitioners' release to their mothers would compromise any ongoing vetting processes. *See, e.g.*, *I.R.L.M.*, 2026 WL 2597933, at *11; *M.A.*, 2026 WL 741623, at *8. Moreover, considering the Petitioners' interests and the risk of erroneous deprivation, requiring ORR to follow the procedures and timelines reflected in its own regulations would impose little burden while substantially reducing the risk of erroneous deprivation. *See* 45 C.F.R. §§ 410.1205, 410.1207 (requiring adjudication of a completed sponsor application for a relative who has previously been the child's primary caregiver "within 10 calendar days of receipt" and formal review of pending sponsor applications every 90 days).

Thus, the third *Mathews* factor also weighs in Petitioners' favor.

## RELIEF

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."); *see also Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022) ("Declaratory and injunctive relief are proper habeas remedies.").

Here, each of the three *Mathews* factors weigh in Petitioners' favor. Habeas relief is warranted because Petitioners' procedural due process rights have been violated by Respondents' delay in releasing Petitioners to their mothers and thus prolonging their detention. *See, e.g.*, *M.A.*, 2026 WL 741623, at *9 (listing cases finding procedural due process violations and granting habeas relief under 28 U.S.C. § 2241 with order to immediately children to the custody of their sponsor); *I.R.L.M.*, 2026 WL 2597933, at *11-12.

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

**ORDER**

For the foregoing reasons, the Petition is **GRANTED**. **IT IS ORDERED** that Respondents shall immediately release Petitioner G.S.R.J. to the custody and care of her mother, F.M.J.R. Respondents shall file a notice within two (2) days of this Order confirming Petitioner's release. **IT IS FURTHER ORDERED** that Respondents are enjoined from re-detaining Petitioners A.H.C.D.L.C. and G.S.R.J. without notice and a meaningful opportunity to be heard before a neutral decisionmaker. Judgment will be entered accordingly.

DATED: October 5, 2026

Karen L. Stevenson

HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE